UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

KEVIN MATTHEWS & CEDRIC MATTHEWS,

                    Plaintiffs,           CV-02-715 (CPS)

    - against -                MEMORANDUM OPINION
                                        AND ORDER
THE CITY OF NEW YORK, N.Y.C. POLICE
OFFICER KEVIN ROYALL, shield # 301,
N.Y.C. POLICE OFFICER PRIOR, shield
# 10243, N.Y.C. POLICE OFFICER MCTIERSON,
shield # 8257,AND N.Y.C. POLICE OFFICER
"JOHN DOE" EACH BEING SUED INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY,

                    Defendants.

------------------------------------------X

SIFTON, Senior Judge.


     Plaintiffs Kevin Matthews ("Kevin") and Cedric Matthews

("Cedric")[1] brought this action against Officers Kevin Royall,

Clarence Prior, and Daniel McTiernan, in their individual and

official capacities, alleging claims for relief pursuant to 42

U.S.C. § 1983. Plaintiffs claimed violations of their rights

under the Fourth, Fifth, and Fourteenth Amendments to the United

States Constitution to be free from excessive force, false

arrest, and malicious prosecution. Plaintiffs also alleged

pendent state law claims against the defendants for assault and

---

     [1] Although it is not the usual practice of this Court to identify
parties by their first names, because the plaintiffs in this case have the
same last name, they will be identified, for purposes of this opinion, by
their first names.

battery, malicious prosecution, and false arrest.[2] On July 15,
2005, after a one-week trial, a jury rendered a verdict for
plaintiff Kevin Matthews and against defendant Kevin Royall for
false arrest and malicious prosecution. The jury awarded
plaintiff Kevin Matthews $2 in economic damages for false arrest,
and $3,000 in economic damages and $500 in punitive damages for
malicious prosecution. The jury also rendered a verdict for
plaintiff Cedric Matthews and against defendant Daniel McTiernan
for assault and battery, and awarded $3,500 in economic damages
and $1,000 in punitive damages. The jury rendered a finding for
defendants on all other claims.

Presently before the Court are the following motions: (1)
Defendant Royall moves pursuant to Rule 50 of the Federal Rules
of Civil Procedure ("Fed. R. Civ. P."), for judgment as a matter
of law on plaintiff Kevin Matthews' claims of false arrest and
malicious prosecution on the grounds that there is insufficient
evidence to support a verdict against him; (2) Defendant Royall
moves, in the alternative, for judgment as a matter of law on the
basis of qualified immunity; (3) Defendant McTiernan moves for an
order setting aside the portion of the jury's verdict which

---

[2] Prior to trial, plaintiffs stipulated to discontinue the following
claims: (1) a claim that the City was liable for the defendant officers'
conduct under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 690-91, because of
its policy and custom of deliberate indifference toward such conduct; (2) a
state law claim of negligence against the City of New York, in the hiring,
training, retention and supervision of defendant police officers; and (3)
claims of negligent and intentional infliction of emotional distress against
all defendants.

granted plaintiff Cedric Matthews $3,500 in economic damages; (4) Defendants Royall and McTiernan move for an order vacating the award of punitive damages against them; and (5) Defendants Royall and McTiernan move for an order that plaintiff Cedric Matthews is not a prevailing party entitled to attorneys' fees under 42 U.S.C. § 1988. For the reasons discussed below, the motions are granted in part and denied in part.

## BACKGROUND

On June 28, 2001, at approximately 5:30 p.m., in Brooklyn New York, plaintiff Kevin Matthews entered the Church Avenue station of the New York City subway system. Kevin testified at trial that he used an unlimited use metrocard to enter the station, but Officer Prior testified that he saw Kevin walk through the service gate without using his metrocard. Kevin testified that he was waiting for his brother, Cedric Matthews, and a friend to meet him at the station, when a man approached him and asked him why he jumped the turnstile. When asked during trial to identify the man, Kevin Matthews pointed at Officer Prior. Kevin testified that Officer Prior was not in uniform at the time, nor was a badge or gun visible. He further testified that he told Officer Prior that he had not jumped the turnstile, and that he told Officer Prior that he had used his metrocard and that he could check it by swiping it at the turnstile. Kevin testified that Officer Prior refused the check the card. Instead,

Kevin testified that Officer Prior began pushing him into a corner using his forearm. He repeatedly asked him why he jumped the turnstile, and when Kevin explained that he did not jump the turnstile, he asked him why he came in through the exit gate. A witness, Sheila Noel, also testified at trial that Kevin Matthews repeatedly stated that he had not jumped the turnstile, and that Officer Prior could check his metrocard. She also testified that she witnessed him asking for Officer Prior's badge number. Another witness, Josue Barjon, also testified that Kevin Matthews repeatedly asked for Officer Prior's badge number. Officer Royall testified that he never saw Kevin Matthews enter the station without paying, although he mistakenly signed a criminal complaint saying that he did.

Officer Prior, however, testified that when he asked Kevin why he went through the service gate, Kevin responded that he had a metrocard and that Officer Prior should get out of his face. He further testified that he asked Kevin for his metrocard, and Kevin threw the metrocard in his face, but then put it away and refused to let Officer Prior check it. Officer Prior testified that he only asked Kevin for the card once, "because after that, he started cursing and carrying on; get the fuck out of my face you fucking pussy. I don't talk to fucking cops. I'm going to kick your fucking ass." Witnesses Sheila Noel and Josue Barjon testified that they did not hear Kevin Matthews curse. Officer

Prior further testified that when Kevin asked him for his badge, he showed it to him. Officer Royall testified that he remembered Kevin saying "check my metrocard," and he does not remember hearing any officer asking Kevin for his metrocard.

Kevin testified that Kevin's brother, Cedric Matthews, and a friend entered the station and asked what was going on. He testified that Officer Prior, not knowing who they were, "[got] into it with them." He told them to "mind their f'g business." Cedric Matthews testified that when he entered the station, he saw Officer Prior holding Kevin up against the gate at the station. He testified that he asked what was going on, and was told to mind his own business. Kevin further testified that he asked Officer Prior for his badge number, but that he refused to give it to him. Instead, Officer Prior responded with numbers such as "1-2-3-4-5-6-7-8."

Kevin testified that while Officer Prior was pushing him against the wall, Officer Royall approached them. He asked what was going on, and then he put himself between Officer Prior and Kevin. Cedric also testified that he saw Officer Royall put himself between Officer Prior and Kevin. Kevin testified that he showed him his badge, and he told Kevin not to worry-that if he had really paid, then everything would be okay.

Kevin testified that eventually, other officers arrived and surrounded him and his brother. He testified that the officers

told them to leave, but he refused because he had paid his fare and because he still wanted Officer Prior's number because he had assaulted him. He testified that while the officers had them surrounded, Officer Prior was still trying to "get to" him. Eventually, the other officers told him to go downstairs and get on the train. Again, Kevin refused because he still wanted Officer Prior's badge number. Moreover, Kevin testified that he was afraid to go downstairs because he saw that there were more police officers there with guns.

Kevin testified that the officers hit him, punched him, and sprayed him with mace. Witness Josue Barjon also testified that he saw the officers hitting Kevin and Cedric Matthews. Kevin identified Officer Prior as one of the officers hitting him. Barjon testified that he saw a lot of people running out of the station with their noses covered due to the mace. A witness, Cauliene Thompson, also testified that she saw officers kicking and punching Kevin Matthews, and that they sprayed something that got into her eyes and her daughters eyes.

Kevin testified that he handed his card to someone in the crowd because he was afraid that if he gave it to a police officer, the card would "disappear" and there would be no proof that he paid his fare. Witness Barjon testified that Kevin handed him the metrocard during the altercation, and that Kevin yelled out his phone number while handing him the card. Cedric also

testified that the officers hit them and put them on the floor where they handcuffed and kicked them. Cedric further testified that his hand was stepped on and that he was sprayed with mace before being taken away by the officers. Cassandra McCoy, the transit employee sitting inside the ticket booth at the station, testified that she did not see any police officers hitting anyone or spraying anyone with mace.

Officer Prior testified that he asked Lieutenant Murray, his supervisor who was present during the altercation, whether he had seen Kevin Matthews go through the gate, but Officer Murray responded that he had not. Officer Prior further testified that Officer Murray eventually gave the order to arrest Kevin and Cedric Matthews, and that Officer Royall was the arresting officer for both. He further testified that both Kevin and Cedric resisted arrest. Officer Murray testified that he was supervising Officers Royall and Prior on the day of the arrest, and that he authorized Officer Royall to arrest Kevin and Cedric Matthews.

By all accounts, a crowd had gathered around the officers and the Matthews brothers, and some individuals in the crowd began yelling words such as "abuse, abuse!"

Cedric testified that while they were being arrested, he was coughing as a result of having been sprayed with mace. He testified that Officer McTiernan grabbed him by the hair, told him not to spit on him, and called him an "f'ing animal". He

further testified that Officer McTiernan punched him in the side and back of the head multiple times.

Kevin testified that he was handcuffed and taken to a hospital, after which he was taken to the police precinct where he spent a couple days. Cedric also testified that he was taken to a hospital for a few hours, after which he spent a few days in the precinct. Kevin and Cedric testified that they sustained injuries as a result of the Officers' actions, and that all criminal charges against them were dismissed.

Witness Barjon testified that after Kevin and Cedric Matthews were arrested, he called the number Kevin had given him, and he reached their older brother, Sheldon. Sheldon Matthews came to the transit authority station and picked up the metrocard.

James A. Eastman, an employee of the New York City Transit Authority, testified that he ran a report on the metrocard, and that the report showed that the card had been used at the Church Avenue station some time between 5:30 and 5:36 p.m. on June 28, 2001.

Dr. Ronald Paytner, an expert witness, testified that the records from the hospital where Kevin and Cedric Matthews were seen after the arrest diagnosed Kevin with a chemical conjunctivitis, multiple soft tissue trauma, and multiple abrasions. He also testified that the ambulance report for Cedric

Matthews indicated symptoms in the right hand, headache, and back soreness. He testified that the hospital report for Cedric Matthews indicated a diagnosis of multiple soft tissue trauma, back strain, and contusion of the lower lip. Cedric Matthews also testified that he made subsequent hospital visits as a result of the injuries sustained that day.

On July 15, 2005, after a 6-day trial, the jury rendered the following verdicts: (1) the jury found for plaintiff Kevin Matthews and against defendant Kevin Royall for false arrest and awarded $2 in economic damages; (2) the jury found for plaintiff Kevin Matthews and against defendant Kevin Royall for malicious prosecution and awarded $3,000 in economic damages; (3) the jury awarded $500 in punitive damages against defendant Royall; (4) the jury found for defendant Kevin Royall on all other claims against him; (5) the jury found for defendant Clarence Prior on all claims against him; (6) the jury found for plaintiff Cedric Matthews and against defendant Daniel McTiernan for assault and battery and awarded $3,500 in economic damages; (7) the jury awarded $1,000 in punitive damages against defendant McTiernan; and (7) the jury found for defendant McTiernan on all other claims against him.

Upon conclusion of the trial, defendants made a Rule 50 motion for judgment as a matter of law. I reserved decision. Presently before the Court are defendant Royall and McTiernan's

renewed Rule 50 motions. Specifically, defendant Royall moves for judgment as a matter of law on plaintiff Kevin Matthews' claims of false arrest and malicious prosecution on the grounds that there is insufficient evidence to support a verdict against him and, in the alternative, for judgment as a matter of law on the basis of qualified immunity. Defendant McTiernan moves for an order setting aside the portion of the jury's verdict which granted plaintiff Cedric Matthews $3,500 in economic damages. Defendants Royall and McTiernan also move for an order vacating the award of punitive damages against them. Finally, defendants Royall and McTiernan move for an order that plaintiff Cedric Matthews is not a prevailing party entitled to attorneys' fees under 42 U.S.C. § 1988. For the reasons discussed below, the motions are granted in part and denied in part.

## DISCUSSION

### Rule 50

Judgment as a matter of law pursuant to Rule 50 is appropriate where there is "no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 120 (2d Cir. 1998). The court may not reach such a determination by evaluating the credibility of witnesses or the relative weight of evidence. Rather, in assessing a motion for judgment under Rule 50, the Court must view the evidence in the light most favorable to the

non-movant. *See Caruolo v. John Crane, Inc.,* 226 F.3d 46, 51 (2d Cir.2000). To succeed on a Rule 50 motion, there must be "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or...such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [it].'" *Concerned Area Residents for the Environment v. Southview Farm,* 34 F.3d 114, 117 (2d Cir. 1994) (quoting *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992)).

<u>Insufficient Evidence</u>

Defendant Royall argues that he is entitled to judgment as a matter of law pursuant to Rule 50 on plaintiff Kevin Matthews's claims for false arrest and malicious prosecution because there is insufficient evidence in the record to support the judgment against him. Specifically, defendant Royall argues that no reasonable jury could determine that probable cause did not exist to arrest Kevin Matthews for at least one of the four crimes for which he was arrested (theft of services, disorderly conduct, inciting to riot, and resisting arrest), and the existence of probable cause to arrest is fatal to both false arrest and malicious prosecution claims. *See, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-119 (2d Cir.1995) (stating, "[t]here can be no federal civil rights claim for false arrest where the

arresting officer had probable cause"); *Graebe v. Falcetta*, 726 F.Supp. 36, 38 (E.D.N.Y.,1989) {"probable cause serves as a complete defense to the charges of false arrest and malicious prosecution").

The parties do not dispute that the jury was properly instructed on the law of probable cause as it related to those four crimes. Defendant instead argues that he testified in court that he witnessed three of the four crimes (disorderly conduct, inciting to riot, and resisting arrest) and that he relied on information provided by his fellow officers regarding Kevin Matthews's theft of services. He argues that no reasonable jury could therefore determine that probable cause did not exist. However, as plaintiff argues, "[t]his argument is premised on the improper conclusion that the jury must credit the police officers' version of events rather than that put forth by plaintiffs and their witnesses....The mere fact that the jury chose to believe plaintiff's witnesses and not the police officers does not make their verdict unreasonable."

At trial, Kevin Matthews testified that he entered the station after using his metrocard, and did not "jump the turnstile." He further testified that he showed his metrocard to the officers, and they refused to check that he had used it. Furthermore, plaintiffs presented multiple witnesses who testified that they saw Kevin Matthews telling the officers to

check his metrocard and asking for Officer Prior's badge number,
but that they did not observe Kevin curse or yell at the
officers. Similarly, though by all accounts a large crowd
gathered to watch the altercation, the witnesses' accounts differ
as to the role, if any, Kevin Matthews played in encouraging or
agitating onlookers.

Accordingly, viewing the evidence in the light most
favorable to Kevin Matthews, I conclude that there is not a
"complete absence of evidence" to support the jury's verdict that
probable cause did not exist to arrest Kevin Matthews.

Qualified Immunity

The qualified immunity doctrine shields "government
officials performing discretionary functions...from liability for
civil damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known." *Harlow v. Fitzgerald,* 457
U.S. 800, 818 (1982); *X-Men Security, Inc. V. Pataki,* 196 F.3d
56, 65-65 (2d Cir.1999). The question of qualified immunity is
independent of the merits of the underlying action and must be
examined independently of the underlying claims. *See Saucier,* 533
U.S. at 207 (2001); *Washington Square Post No. 1212 v. Maduro*,
907 F.2d 1288, 1292 (2d Cir.1990)(*citing Mitchell v. Forsyth,* 472
U.S. 511, 527-28). In assessing whether an officer is entitled to
qualified immunity, the court must first consider this question:

"Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201. The "next sequential step is to ask whether the right was clearly established." *Id.* The right "must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999)(citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

> A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. The unlawfulness must be apparent.

*McCullought v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999). Finally, "even where the law and the scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was 'objectively reasonable' for him to believe his acts were lawful." *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992). The reasonableness test is met, and the officer is entitled to qualified immunity, if "reasonably competent officials could disagree" as to whether the conduct at issue would violate clearly established rights. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Cartier*, 955 F.2d at 46 (2d Cir.1992); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). The "qualified immunity standard

gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Defendant Royall argues that he is entitled to qualified immunity with respect to plaintiff Kevin Matthews's false arrest claim because it was objectively reasonable for him to believe that his supervisor, Lieutenant Murray, as well as fellow officer, defendant Prior, were accurate when they informed him that they had witnessed Kevin Matthews enter the station through the exit-gate without paying a fare. Defendant Royall further argues that he is entitled to qualified immunity with respect to plaintiff Kevin Matthew's malicious prosecution claim because he was acting reasonably when he signed the erroneous criminal complaint.

I need not address the bulk of the parties' arguments with regards to the issue of qualified immunity because I hold, in accordance with the Second Circuit Court of Appeals' decision in *Kerman v. City of New York*, 374 F.3d 93 (2d Cir.2004), that defendant Royall has effectively waived the defense of qualified immunity.

In *Kerman*, plaintiff Kerman brought an action against police officer Crossan after Crossan arrested him, detained him, and took him to a hospital for psychiatric observation. Kerman stated claims for, *inter alia*, unlawful seizure, false imprisonment,

excessive force, and intentional infliction of emotional distress. In a post-trial motion, Crossan argued that he was entitled to qualified immunity. In ruling that Crossan was entitled to qualified immunity, "the district court held both that Crossan's actions did not violate clearly established law and that it was objectively reasonable for Defendant Crossan to believe that his action did not violate existing law." *Kerman*, 374 F.3d at 107 (internal quotations omitted). On appeal, Kerman argued that the district court erred in ruling that Crossman was entitled to qualified immunity because "Crossan waived the defense by not pursuing it at trial...[and] the district court's ruling was based on factual findings by the court that usurped the function of the jury." *Id*. at 108.

In reversing the district court's decision, the Court of Appeals stated that the district court erred in holding that Crossan was entitled to qualified immunity because the holding was based on factual findings that can only be made by a jury. The Court reasoned:

> The matter of whether a right was clearly established at
> the pertinent time is a question of law. *See, e.g.,
> Crawford-El v. Britton*, 523 U.S. 574, 589, 118 S.Ct.
> 1584, 140 L.Ed.2d 759 (1998); *Mitchell v. Forsyth*, 472
> U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985);
> *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. 2727, 73
> L.Ed.2d 396; *X-Men Security, Inc. v. Pataki*, 196 F.3d 56,
> 66 (2d Cir.1999); *Genas v. State of New York Department
> of Correctional Services*, 75 F.3d 825, 830 (2d Cir.1996).
> In contrast, the matter of whether a defendant official's
> conduct was objectively reasonable, i.e., whether a
> reasonable official would reasonably believe his conduct

did not violate a clearly established right, is a mixed
question of law and fact. *See, e.g., Lennon v. Miller*, 66
F.3d 416, 422 (2d Cir.1995); *Oliveira v. Mayer*, 23 F.3d
at 649-50. A contention that--notwithstanding a clear
delineation of the rights and duties of the respective
parties at the time of the acts complained of--it was
objectively reasonable for the official to believe that
his acts did not violate those rights "has its principal
focus on the particular facts of the case." *Hurlman v.
Rice*, 927 F.2d 74, 78-79 (2d Cir.1991); *see, e.g.,
Oliveira v. Mayer*, 23 F.3d at 649-50. Although a
conclusion that the defendant official's conduct was
objectively reasonable as a matter of law may be
appropriate where there is no dispute as to the material
historical facts, *see, e.g., Lennon v. Miller*, 66 F.3d at
421; *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir.1993);
*Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987), if there
is such a dispute, the factual questions must be resolved
by the factfinder, *see, e.g., Kerman II*, 261 F.3d at 241;
*Oliveira v. Mayer*, 23 F.3d at 649; *Calamia v. City of New
York*, 879 F.2d 1025, 1036 (2d Cir.1989). "Though
'[i]mmunity ordinarily should be decided by the court,'
... that is true only in those cases where the facts
concerning the availability of the defense are
undisputed; otherwise, jury consideration is normally
required ...." *Oliveira v. Mayer*, 23 F.3d at 649 (quoting
*Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116
L.Ed.2d 589 (1991)). After receiving "the jury['s] ...
deci[sion as to] 'what the facts were that the officer
faced or perceived,'" the court then may "make the
ultimate legal determination of whether qualified
immunity attaches on those facts." *Stephenson v. Doe*, 332
F.3d 68, 81 (2d Cir.2003) (emphases added); *see, e.g.,
Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.) ("If there are
unresolved factual issues which prevent an early
disposition of the defense, the jury should decide these
issues on special interrogatories. The ultimate legal
determination whether ... a reasonable police officer
should have known he acted unlawfully" should be made by
the court "on the facts found" by the jury. (emphasis
added)), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112
L.Ed.2d 414 (1990).

374 F.3d at 108-109.

In the present case, almost all of the facts relevant to an

inquiry into whether Officer Royall reasonably believed his acts

were lawful are in dispute. As the *Kerman* Court noted, "[i]n
determining whether to grant judgment as a matter of law, the
court 'must disregard all evidence favorable to the moving party
that the jury is not required to believe.' Id. at 114, *quoting
Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 151
(2000). Here, as plaintiffs point out, the jury was not required
to believe the police officers over the plaintiffs or their
witnesses. In order to preserve a qualified immunity defense,
defendant Royall should have requested special interrogatories.
However, as was the case in *Kerman*, the only questions submitted
to the jury were questions of liability, "[a]nd to the extent
that the court's immunity rulings [would be] based on the court's
own factual findings that the jury neither made nor would have
been compelled to make, the rulings [would] infringe[]
[plaintiff]'s Seventh Amendment right to have the facts found by
a jury." 374 F.3d at 117.

In *Kerman*, the Court of Appeals noted the absence of
interrogatories such as:

> whether Kerman appeared to be mentally unstable, whether
> his apartment was filthy or merely messy, whether
> Pontrelli obtained any medical information from Dr.
> Malone, whether Crossan himself obtained information
> about Kerman's condition by conversing with a doctor, or
> whether Crossan hung up on Dr. Malone and thereby
> knowingly or recklessly bypassed an opportunity to obtain
> expert information as to whether Kerman posed a danger to
> himself or others.

*Id*. at 120. "[H]aving requested and received from the jury a

general verdict, and having asked, with respect to the immunity

defenses, only whether Crossan had probable cause, the court was

not permitted to make findings as to other facts." *Id.*

> [I]f the requisite fact questions had been submitted to
> the jury, and if the jury had answered them favorably to
> Crossan, the district court would then have had the
> authority...to make the ultimate legal determination of
> whether Crossan was entitled to qualified immunity on the
> Fourth Amendment claim...based on the jury's factual
> findings. To the extent that a particular finding of fact
> was essential to an affirmative defense, however, it was
> incumbent on Crossan to request that the jury be asked
> the pertinent question. Not having made such a request,
> Crossan was not entitled to have the court, in lieu of
> the jury, make the finding.

*Id.* Accordingly, the Court of Appeals held that Crossan had

"effectively waived" the defense of qualified immunity. *Id.* at

118.

Here, defendant Royall did not request that the jury be

asked to respond to factual interrogatories about the events that

had transpired that day, nor did he set forth interrogatories in

his proposed verdict form. The fact that Royall failed to request

the appropriate factual interrogatories precludes me from

granting the relief he now requests. I conclude that defendant

Royall "effectively waived" the defense of qualified immunity.

Accordingly, the jury's verdict against defendant Royall on

plaintiff Kevin Matthews's false arrest and malicious prosecution

claims stands.[3]

---

[3] On the first day of trial, I stated, "on the question of qualified
immunity and the circumstances that I have been presented with here, it seems to
me an issue to be determined by me when as and if there's a finding of liability

Economic Damages

Defendant McTiernan argues that the jury award of $3,500 in economic damages to Cedric Matthews should be vacated because it was unsupported by the evidence. The parties do not dispute that the only piece of evidence introduced by Cedric Matthews in support of receiving economic damages was an ambulance bill for $354. Defendants argue that the award should be reduced to $354, the amount of the ambulance bill.

As a preliminary matter, I note that this Court may not simply reduce a damages award. Should this Court find that the damages were excessive, this Court must present the plaintiff with a choice between reduction and a new trial. *See, e.g., Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914-915 (2d Cir.1997)(stating, "[w]here a jury has awarded damages in an amount considered excessive by the trial court, it is not among

---

against one of the defendants. I assume that, because the verdict forms present me with no issues for resolution by the jury. Even thinking it over myself, to see if the jury could help me out, I can't really conceive of any pointed interrogatory, as the Court of Appeals says, that I could ask which would assist me in resolving the issue." The defendant argues, "[t]herefore, plaintiff's suggestion that interrogatories were required to enable the Court to make the qualified immunity determination is directly contrary to the Court's own assessment of the case and previous ruling on this issue." However, my statement constitutes neither a "ruling" nor an "assessment of the case," given that it was made before any evidence had been presented. Moreover, after all of the evidence had been presented, at the charge conference, I stated, "no side has proposed, as I invited you, to submit special interrogatories to the jury which would assist me in determining the issue of qualified immunity." Thus, defendant clearly failed to request special interrogatories even after he had been invited to do so. Moreover, defendant's interpretation of the Court's colloquy confuses the Court's role in the determination of qualified immunity. As described above, while it is for the Court to make the ultimate legal determination of whether a right was clearly established and whether a reasonable officer would have known he was acting unlawfully, that determination can only be made on the facts found by the jury, and it is the defendant's burden to request special interrogatories to elicit those factual findings.

the powers of [the court] simply to reduce the damages without offering the prevailing party the option of a new trial") (internal quotations and citations omitted). "This rule derives from the trial-by-jury protections of the Seventh Amendment." *Id.* at 915.

Defendants do not contend that the instructions given to the jury on this matter were improper; rather, they argue that the award was unsupported by the evidence. At trial, I instructed the jury that its award of economic damages "may not be based on speculation on the one hand or for the other. It must be based on evidence and the reasonable evaluation of that. Evidence using your reason and common sense." Plaintiffs argue that the award was not excessive because the jury could have decided to compensate Cedric Matthews for his other visits to the hospital, about which he testified in court. Plaintiffs also argue that Cedric testified that he was on his way to Monroe College on the day of the incident, and that he might have registered for school had he not been arrested. Plaintiffs argue that the jury might have determined that Cedric suffered economic damages as a result of his failure to enroll in school.

The Second Circuit Court of Appeals has stated:

"The district court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial, in at least two distinct kinds of cases: "(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that

should be stricken,... and (2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error." *Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 337 (2d Cir.1993) (quoting *Shu-Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 49 (2d Cir.1984)). Where there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless "'the award is so high as to shock the judicial conscience and constitute a denial of justice,'" *O'Neill v. Krzeminski,* 839 F.2d 9, 13 (2d Cir.1988) (quoting *Zarcone v. Perry,* 572 F.2d 52, 56 (2d Cir.1978)). Where the court has identified a specific error, however, the court may set aside the resulting award even if its amount does not "shock the conscience"....*See generally Gasperini v. Center for Humanities, Inc.,* 518 U.S. at 432-37; *Dagnello v. Long Island R.R.,* 289 F.2d 797, 806 (2d Cir.1961).

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir.1998).

The jury's award of $3500 in economic damages to Cedric Matthews was, as defendants argue, unsupported by the evidence. Even if plaintiffs are correct in surmising that the jury made the award to compensate Cedric for other hospital bills or his failure to enroll in school, that award would have been based on speculation, not the evidence on the record, and the plaintiff was required to prove economic damages. *See Bracey v. Board of Educ. of City of Bridgeport*, 368 F.3d 108, 119, (2d Cir.2004)(stating, "[a]s Judge Posner has remarked more than once...'A plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them.'")(*quoting Taliferro v. Augle*, 757 F.2d 157, 162 (7th Cir.1985)). Moreover, in this case, there is a "particular

discernible error" resulting in "a quantifiable amount that should be stricken." *Kirsch*, 148 F.3d at 165. Defendants do not dispute that Cedric Matthews should be awarded the $354 in damages that he proved at trial. Accordingly, plaintiff must consent to a reduction of economic damages in the amount of $3146 or consent to a new trial on the issue of damages suffered by plaintiff Cedric Matthews as a result of the assault and battery by defendant McTiernan.

<u>Punitive Damages</u>

Defendants Royall and McTiernan both argue that the jury's award of punitive damages should be vacated. Each of their arguments is addressed, in turn, below.

*Defendant Royall*

Defendant Royall argues that even if this Court does not enter judgment as a matter of law dismissing Kevin Matthews's false arrest and malicious prosecution claims against him, the Court should vacate the portion of the verdict awarding $500 in punitive damages because there is no evidence in the record to support such an award.

Defendants do not argue that the instructions given to the jury on this matter were improper. The instructions provided, in relevant part:

> [You are] not required to award punitive damages but [they] may be awarded in your discretion if you find that the purposes for which punitive damages have been established will be furthered by such an award. The

purposes of punitive damages are to punish a defendant
for only for extreme []or outrageous conduct and to deter
the particular defendant involved or others in similar
situations from committing such conduct in the future.
You may award punitive damages only if you find that the
acts or omissions of the defendant were done maliciously
or wantonly.  An act is done maliciously in this context
...[if] it was prompted by ill will or spite towards the
injured person. An act or failure to act is wanton as the
law defines that term if it's done with reckless or
callous disregard or indifference to the rights of the
injured person. The plaintiffs have the burden of
proving, again, by a preponderance of the evidence that
a defendant acted either maliciously or wantonly in order
to be entitling to an award of punitive damages....[I]f
you determine that a particular plaintiff is entitled to
punitive damages, you must then in your discretion fix an
amount of money that's sufficient to accomplish the
purposes of punitive damages which, as I say [are] to
punish a defendant for outrageous conduct and to deter
him or others like him from performing similar conduct in
the future....[Y]ou will make an award in such amount as
you believe is the lowest necessary in order to
accomplish the  purposes of [punitive] damages.

Defendant Royall argues that the punitive damages award
should be vacated because there is no evidence in the record
"from which one could infer the sort of 'extreme or outrageous
conduct,' 'ill will or spite,' or 'reckless disregard or
indifference' sufficient to support an award for punitive
damages." Defendant argues that the "unrebutted testimony" was
that Royall "simply made a mistake in completing the arrest paper
work...." Presumably, defendant is referring to the malicious
prosecution claim against defendant Royall. However, defendant
ignores the fact that the jury also rendered a verdict against
him on plaintiff Kevin Matthews's false arrest claim. There is
sufficient evidence on the record which could lead a reasonable

jury to find that defendant Royall acted in "callous disregard or indifference" to the rights of plaintiff Kevin Matthews. Kevin testified that he repeatedly asked the officers to check his metrocard to verify that he had used it to enter the station. Defendant Royall himself testified that he heard Kevin Matthews ask the officers to check his metrocard. The jury might have found, and was entitled to find, for example, that when defendant Royall arrested Kevin Matthews without having checked the metrocard, he acted with "callous disregard or indifference" to his rights. Defendant Royall's motion to vacate the award of punitive damages against him is accordingly denied.

*Defendant McTiernan*

Defendant McTiernan also argues that the punitive damages award of $1,000 against him should be vacated because it is not supported by the evidence in the record. However, as mentioned above, plaintiff Cedric Matthews testified at trial that Officer McTiernan grabbed him by the hair, called him an "f'ing animal," and punched him in the side and back of the head multiple times. If the jury credited Cedric's version of the events, which it was entitled to do, it could have found that Officer McTiernan's actions were "prompted by ill will or spite" or "done with reckless or callous disregard or indifference" to Cedric's rights. Therefore, defendant McTiernan's motion to vacate the award of punitive damages against him is denied.

Attorneys' Fees

Finally, the defendants argue that because plaintiff Cedric Matthews prevailed only on his assault and battery claim and did not prevail on any claim under Section 1983, he cannot recover attorneys' fees. Defendants accordingly seek an order that Cedric Matthews is not a prevailing party for purposes of an award of attorneys' fees under 42 U.S.C. § 1988.[4]

Plaintiff argues that he is entitled to attorneys' fees pursuant to *Prio v. County of Saratoga*, 245 A.D.2d 658 (3d Dept. 1997). In that case, the court held that "[w]here relief is sought on both State and Federal grounds but granted only on the State claim, even if on a non-constitutional issue, counsel fees may still be awarded....The underlying rational is that [i]n some instances... the claim...may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Id.* at 659 (internal quotations and citations omitted).

The present case, however, does not involve a constitutional question which this Court was "reluctant to resolve." To the contrary, the jury considered Cedric Matthews's § 1983 claims and rejected them. The Second Circuit Court of Appeals, while recognizing that "[a] fee award in a case in which a plaintiff

_____

[4]"In any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee as part of the costs...."

prevails only on a state law cause of action, because the court chose to avoid the resolution of the related constitutional claim, furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary constitutional decisions," *Bonner v. Guccione*, 178 F.3d 581, 595 (2d Cir.1999) (internal quotations and citations omitted), has held that the policy could not "possibly be implicated in a case in which the federal claim-whether constitutional or statutory-has been actually decided." *Id*. The Court of Appeals reasoned that allowing plaintiffs to recover attorneys fees for successful state law claims when their federal claims had been dismissed would encourage plaintiffs to file meritless federal claims along with their state law claims in order to circumvent the rule that attorneys' fees are not available for those state law claims. *Id.; see also Russo v. State of N. Y.*, 672 F.2d 1014, 1023 (2d Cir.1982) (reversing district court's grant of attorneys' fees to a plaintiff who lost on his § 1983 claim but prevailed on his malicious prosecution claims, stating, "[i]n section 1988 Congress has provided that a prevailing party in a section 1983 action can recover attorney's fees, however, it has not provided that a prevailing party in a malicious prosecution action can do so. In the absence of legislative intent and pronouncement, it was not within the province of the trial court

to fashion an award of attorney's fees in this case. A court cannot appropriate a function which Congress has reserved for itself.")

It is not disputed that Cedric Matthews did not prevail on any of his federal claims, and he prevailed only on his state law claim of assault and battery. Cedric Matthews is therefore not a "prevailing party" for purposes of 42 U.S.C. § 1988, and he is not entitled to attorneys' fees. Defendants' motion is accordingly granted.

## CONCLUSION

For the reasons set forth above, defendants' post-trial motions are granted in part and denied in part. Plaintiff Cedric Matthews is directed to file a written consent to a reduction of economic damages in the amount of $3146 within thirty (30) days of the issuance of this decision. Failure to do so will result in a new trial on the issue of damages suffered by plaintiff Cedric Matthews as a result of the assault and battery by defendant McTiernan on a date to be set by this Court.

The clerk is directed to transmit a copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

Dated:      Brooklyn, New York
            March 27, 2006

                    By: /s/ Charles P. Sifton (electronically signed
                        United States District Judge